# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
June 19, 2013 Session

## WILLIAM NED MCCOY, ET AL. v. RICHARD LEE BALES, ET AL.

### Appeal from the Chancery Court for Hancock County
No. 09-9215     Thomas R. Frierson, II, Chancellor

---

### No. E2012-02503-COA-R3-CV-FILED-AUGUST 9, 2013

---

William Ned McCoy and Carolyn McCoy ("Plaintiffs") sued Richard Lee Bales and Shelia M. Bales ("Defendants") alleging, in part, that Defendants had encroached upon real property owned by Plaintiffs, and seeking, in part, a determination with regard to a boundary line. The case was tried before a jury, and the Trial Court entered judgment upon the jury's verdict finding and holding, *inter alia*, that the property is owned by the parties as set out in the Dennis Fultz survey dated February 29, 1996. Plaintiffs appeal to this Court raising an issue regarding whether the evidence supports the jury's verdict. We hold that material evidence supports the jury's verdict, and we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and JOHN W. MCCLARTY, J., joined.

James D. Estep, III, Tazewell, Tennessee, for the appellants, William Ned McCoy and Carolyn McCoy.

Douglas T. Jenkins, Rogersville, Tennessee, for the appellees, Richard Lee Bales and Shelia M. Bales.

# OPINION

## Background

Plaintiff William Ned McCoy and defendant Shelia M. Bales are brother and sister. Their mother, Lucy Mae McCoy ("Mother"), owned real property located in Hancock County, Tennessee. Defendants lived with Mother and, at some point, purchased property adjoining Mother's and built a house. After Mother died, Plaintiffs purchased at auction the property previously owned by Mother, which Mr. McCoy described as "the homeplace." Disputes arose between Plaintiffs and Defendants with regard to the property line, and in 2009, Plaintiffs sued Defendants. The area of real property in dispute between the parties is a roughly pie-shaped area 30 or 40 feet wide at the road, which tapers down to a point at a persimmon tree. The case proceeded to trial before a jury in 2012.

Surveyor Gary Weems surveyed the property line for Plaintiffs and prepared a survey dated October of 2008. This survey was introduced as an exhibit at trial. Mr. Weems testified at trial about his survey. He admitted that his survey and opinions rely heavily on a 1951 survey prepared by O.O. Graham ("the Graham Survey").

Mr. Weems agreed, when asked, that he was aware that when the calls from the Graham survey were put into a computer and added up, that the Graham survey was approximately 14 acres off. He also was aware that there is a significant closure error in the Graham survey. Mr. Weems admitted that he used only the line from the Graham survey when preparing his survey, and that, therefore, his survey could be inaccurate if that line was inaccurate.

Mr. Weems testified that when he surveyed he looked for the point in the center of the road as called for in the Graham survey, and that his magnet hit something, which he used to make a corner. Mr. Weems admitted that he did not dig to investigate whether the item located by his magnet was the marker. He further admitted that the item located by his magnet could have been a nail, a bottle cap, or something else metal that the road was paved over.

Plaintiff Mr. McCoy testified at trial and admitted that after he purchased his property, he went to court in another case and asserted that the Graham survey had a significant closure error that caused the property to be 17 acres less than he thought that he purchased.

Surveyor Dennis Fultz surveyed the property in 1996. Mr. Fultz's survey was introduced as an exhibit at trial. Mr. Fultz testified: "I was contracted by Equity Title

National First Lenders to survey 5 acres for a mortgage for Mr. Bales in '96. It would have been February the 27th." Mr. Fultz testified in detail about how he performed his survey and opined that the survey he prepared accurately depicts the boundary line.

Mr. Fultz testified that he looked at the Graham survey when he prepared his survey. He testified that the Graham survey: "has a precision problem. It fails to close. I ran through it. I do that with most of them when I pick them up, just review mathematics to see if they're precise. It wasn't. It had a substantial survey error, possibly 30 feet or so."

Defendant Mr. Bales testified that he did not hire Mr. Fultz to perform a survey but rather First National Lenders in Tazewell did. Mr. Bales did not meet Mr. Fultz until the day of trial, but admitted that he had "talked to him, and I like the man. I believe he's honest."

After trial, the Trial Court entered judgment on the jury's verdict on October 24, 2012, finding and holding:

> [The jury] upon their oath do say, that they find the issues in favor of the Defendants, and that the property is not owned by the parties as shown on the Gary Weems survery [sic] dated October 8, 2008, and that the property is owned by the parties pursuant to the Dennis Fultz survey dated February 29, 1996.
>
> It is therefore considered that the survey of Gary Weems dated October 8, 2008 is not the valid survey of the subject property, and that the recording thereof in the register's office be, and the same is hereby, vacated, annulled and set aside. It is further considered by the court that the Dennis Fultz survey dated February 29, 1996 is the valid survey of the subject property.

Plaintiffs appeal to this Court.

## Discussion

Although not stated exactly as such, Plaintiffs raise one issue on appeal: whether the evidence supports the jury's verdict.

As our Supreme Court has instructed:

> An appellate court shall only set aside findings of fact by a jury in a civil matter if there is no material evidence to support the jury's verdict. Tenn.

R. App. P. 13(d); *Whaley v. Perkins*, 197 S.W.3d 665, 671 (Tenn. 2006). In determining whether there is material evidence to support a verdict, we shall: "(1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence." *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704 (Tenn. 2000) (citing *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn 1978)). "Appellate courts shall neither reweigh the evidence nor decide where the preponderance of the evidence lies." *Barnes*, 48 S.W.3d at 704. If there is any material evidence to support the verdict, we must affirm it; otherwise, the parties would be deprived of their constitutional right to trial by jury. *Crabtree Masonry Co.*, 575 S.W.2d at 5.

*Creech v. Addington*, 281 S.W.3d 363, 372 (Tenn. 2009).

In essence, the resolution of this case rested in large part upon a battle of opinions of the expert surveyors. As pertinent to this appeal, the Jury Verdict Form asked the jury to answer the following questions[1]:

1. Is the property owned by the parties as shown on the Gary Weems survey dated October 8, 2008?

* * *

2. Is the property owned by the parties as shown on the Dennis Fultz survey dated February 29, 1996?

The jury answered no to the first question and yes to the second, finding that the property is owned as depicted on the survey prepared by Mr. Fultz. Thus, the jury did as instructed and chose one of the two options it had been presented, i.e., the two surveys introduced at trial. From the record before us, no party objected either to the jury instructions or to the Jury Verdict Form. Plaintiffs did not file a motion for new trial.

The record on appeal shows that the jury heard Mr. Fultz's testimony regarding the preparation of his survey and his opinion that his survey accurately depicted the boundary. They also heard the testimony of Mr. Weems about how his survey was based upon the Graham survey. The jury heard Mr. Weems admit that if the line in the Graham

---

[1]Depending upon their answer to the first two questions, the jury may then have considered questions on the verdict form regarding damages.

survey were incorrect then the survey prepared by Mr. Weems could be incorrect. Furthermore, the evidence in the record on appeal reveals that the jury heard testimony from multiple witnesses, including Plaintiff Mr. McCoy, about the inaccuracy of the Graham survey.

In their brief on appeal Plaintiffs argue that the jury also heard evidence that suggested that the survey prepared by Mr. Fultz "did not correspond with the actual calls in the deeds of the Defendants/Appellees," that Plaintiffs had paid their property taxes, and further that Defendants failed to establish adverse possession. We, however, must "(1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence." *Creech*, 281 S.W.3d at 372 (quoting *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704 (Tenn. 2000)). When we apply this standard, as we must, the countervailing evidence to which Plaintiffs point is "discarded."

The jury was presented with two possible surveys and evidence in support of each, and the jury chose one of those surveys. The jury was free to choose to accept or reject any of the evidence, and the jury clearly chose the survey prepared by Mr. Fultz over the one prepared by Mr. Weems. Plaintiffs are, in essence, asking this Court to reweigh the evidence to determine where the preponderance lies. This we must not and will not do. The fact that countervailing evidence may have been presented at trial does not mean that there is no material evidence to support the jury's verdict.

The record on appeal contains material evidence supporting the jury's verdict that the survey prepared by Mr. Fultz "is the valid survey of the subject property." Given this, we affirm the Trial Court's October 24, 2012 judgment.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellants, William Ned McCoy and Carolyn McCoy, and their surety.

_____
D. MICHAEL SWINEY, JUDGE